UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HECTOR HORTA, individually and on behalf of
others similarly situated,

     Plaintiff,

      vs.

KINGS LOGISTICS, L.L.C., GRAND MARKET
INTERNATIONAL CORP., SAIDABROR
KHODJAEV, in his professional and individual
capacities.

     Defendants.

Civil Action No.:  1:22-cv-2508

**CLASS AND COLLECTIVE
ACTION COMPLAINT FOR
DAMAGES, RESTITUTION
AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

    Plaintiff, individually and on behalf of all others similarly situated, by and through

his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges, upon personal knowledge

and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

    1.  This is a collective and class action brought by Individual and Representative

Plaintiff Hector Horta ("Plaintiff" or "Mr. Horta") and all putative plaintiffs (collectively

"Plaintiffs"), on behalf of themselves and on behalf of the proposed Collective and Classes

identified below. Plaintiff and the members of the putative Collective and Classes were or are

employed by Defendants Kings Logistics L.L.C. ("Kings Logistics"), Grand Market International

Corp. ("GMI," collectively with Kings Logistics, the "Corporate Defendants"), and Saidabror

Khodjaev ("Khodjaev" or "Individual Defendant", and collectively the Individual Defendant and

the Corporate Defendants are referred to as "Defendants") during the relevant Class and Collective

Periods as "Delivery Drivers" who provided grocery delivery services to the Company's clients.

2.    Plaintiff and the putative Collective and Classes were affected by one or more of the Defendants' unlawful policies and practices, including compensating Delivery Drivers based on flat shift rates rather than the number of actual hours worked within a workweek. Through these policies and practices, Defendants unlawfully denied Plaintiff Horta and the putative Collective and Classes overtime premiums for all hours worked over 40 in a workweek, failed to pay minimum wage for all hours worked, and failed to reimburse or otherwise unlawfully deducted business expenses, failed to pay Plaintiffs on a weekly basis, unlawfully withheld gratuities, and engaged in various other recordkeeping practices and notice failures that violated both federal and state laws.

3.    Plaintiffs are all similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Federal Rule of Civil Procedure 23 and have suffered the same violations pursuant to Defendants' common policies and practices.

4.    The Collective is made up of all persons who are or have been employed by Defendants as Delivery Drivers anywhere in the United States within the period of three years from this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policies and practices of: (i) paying Delivery Drivers a flat rate per shift, rather than paying them for actual hours worked within a workweek; (ii) failing to provide Delivery Drivers with any method or procedure for recording actual hours worked, resulting in Defendants' failure to pay the Collective their overtime premiums for all hours worked over forty during the Collective Period; (iii) and failing to maintain proper recordkeeping practices;  all in violation of the Fair Labor Standards Act ("FLSA").

5.    The Class(es) are made up of all persons who are or have been employed by

Defendants as Delivery Drivers in New York State within the period of six years prior to the filing date (the "Class Period") and who were subject to Defendants' aforementioned unlawful policies and practices resulting in the following violations of the New York Labor Law ("NYLL"): (i) failure to pay overtime premiums for all hours worked in excess of forty hours within a workweek, (ii) failure to pay the minimum wage for all hours worked, (iii) unlawful deductions from wages for business expenses, whether directly or indirectly; (iv) unlawful withholding of gratuities; (v) failure to provide wage notices at the time of hiring; (vi) the failure to provide accurate wage statements on each payday that includes the information required by the NYLL, including the actual number of hours worked during the pay period; and (vii) failing to maintain proper recordkeeping practices.

6.      Plaintiff seeks relief for the Collective under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*. and for the Classes pursuant to the applicable provisions of the New York Labor ("NYLL"), §§ 190 *et seq*., to remedy the Defendants' failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief.

## **PARTIES**

7.      Individual and Representative Plaintiff Hector Horta was a Delivery Driver with Kings Logistics from on or around August 5, 2020, through December 4, 2021. He presently, and at all relevant times, resides in Brooklyn, New York.

8.      Defendant Kings Logistics is for-profit organization that, by and through various contractual relationships, is paid to deliver groceries on a daily basis throughout New York.

9.      Defendant Kings Logistics is incorporated under the laws of the State of New York and registered to do business as a domestic business corporation in the State of New York.

10.     Defendant Kings Logistics maintains its principal place of business at 2365 East

13th Street, Apartment 2J, Brooklyn, New York, 11229.

11.    Upon information and belief, Kings Logistics has an annual gross volume of sales in excess of $500,000.

12.    Defendant GMI owns and operates the well-known grocery chain NetCost Market, to which Kings Logistics exclusively provided its delivery services.

13.    Defendant GMI is incorporated under the laws of the State of New York and registered to do business as a domestic business corporation in the State of New York.

14.    Defendant GMI lists 626 Sheepshead Bay Road, Suite 740, Brooklyn, New York, 11224 as its address for service of process with the New York State Department of State.

15.    Upon information and belief, Defendant GMI maintains its principal place of business at 1601 Gravesend Neck Road, Suite 15, Brooklyn, New York, 11229.

16.    Upon information and belief, GMI has an annual gross volume of sales in excess of $500,000.

17.    Upon information and belief, Defendant Khodjaev is the sole owner of Kings Logistics and maintains his home, office and principal place of business at 2365 East 13th Street, Apartment 2J, Brooklyn, New York, 11229.

18.    Defendant Khodjaev possesses and regularly exercises sufficient control over the day-to-day operations of Kings Logistics to be considered Plaintiffs' employer under the FLSA and NYLL.

19.    Defendant Khodjaev, upon information and belief, manages Kings Logistics' financials, created the policies and practices that are the subject matter of this lawsuit, and exercises authority to hire and fire employees of Kings Logistics.

20.    Defendant Khodjaev exercises sufficient control over the day-to-day operations of

Kings Logistics to be considered Plaintiff's employer under the FLSA and NYLL.

21.     Based on the above, at all relevant times, each of the Defendants were the "employers" of Plaintiff and members of the Collective and Class(es) under all applicable statutes.

## JURISDICTION AND VENUE

22.     This court, Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

23.     Specifically, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207, *et seq*.

24.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

25.     Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this action occurred in this District.

26.     This Court has personal jurisdiction over Defendant Kings Logistics because it is a domestic corporation with headquarters in New York, has substantial business operations in New York, and routinely transacts business in New York.

27.     This Court has personal jurisdiction over Defendant GMI because it is a domestic corporation with headquarters in New York, has substantial business operations in New York, and routinely transacts business in New York.

28.     This Court has personal jurisdiction over Defendant Khodjaev because, upon information and belief, he lives and works in New York and routinely transacts business in New York.

## FACTUAL ALLEGATIONS

### Kings Logistics and GMI are Joint Employers

29.     Mr. Horta and the members of the putative Collective and putative Classes are presently, or were formerly, jointly employed by the Defendants as Delivery Drivers.

30.     Kings Logistics provides grocery delivery services throughout all of New York City **_exclusively_** for NetCost Market, which is wholly owned and operated by GMI.

31.     Upon information and belief, Kings Logistics operated its food delivery services as a contracted service to GMI, and primarily operated out of the GMI-owned NetCost Market store located at 532 Neptune Ave., Brooklyn, New York, 11224.

32.     GMI contracted with Kings Logistics to provide delivery for grocery items purchased via their NetCost Market website to be delivered throughout New York City.

33.     Upon information and belief, as part of this contract, Defendants hired Delivery Drivers to provide the aforementioned food delivery services to customers of GMI.

34.     Defendants uniformly, and pursuant to a common policy, misclassified Plaintiff and all other Delivery Drivers as independent contractors.

35.     Plaintiff and the putative Collective and Class(es) were economically dependent on GMI because their delivery services were exclusive to the groceries purchased by and through GMI's NetCost Market.

36.     Supervisors and managers at **_both_** Kings Logistics and GMI directed, controlled, and supervised the Delivery Drivers' work.

37.     For example, when they arrived at the NetCost Market to load their vehicles, Delivery Drivers received direction and control from employees at the grocery store who managed

the online ticket orders from GMI's customers and prepared and assisted in loading the vehicles for delivery of the groceries to GMI's customers.

38.    GMI was also responsible for establishing the delivery windows within which Delivery Drivers had to deliver the groceries.

39.    Specifically, the online grocery shopping that was done directly through the NetCost Market's website only provided customers with 2 delivery windows: either 11:00 am to 2:00 pm or 4:00 pm to 8:00 pm, which, upon information and belief, were established by GMI.

40.    Thus, based on the delivery windows established by GMI, Kings Logistics required all Delivery Drivers to regularly work from 10:00 am to at least 8:00 pm, but often later to complete their last delivery.

41.    Delivery Drivers could not accept or reject certain deliveries and/or routes without being subject to termination.

42.    Delivery Drivers were not able to work for other companies during the times they were expected to be performing deliveries for Defendants.

43.    Pursuant to directives by Defendants, Delivery Drivers arrived at a GMI-owned and -operated NetCost Market at 10:00 am to load their vehicles for their first delivery window (11:00 am to 2:00 pm), then return to the store to reload for the second delivery window (4:00 pm to 8:00 pm).

44.    This routine was the same nearly every day that Plaintiff worked for Defendants.

45.    Mr. Horta worked exclusively for GMI and Kings Logistics for over a year.

46.    Upon information and belief, other Delivery Drivers similarly had long-term, exclusive working relationships with Defendants.

47.    The grocery delivery service was integral to GMI's business operations.

48.     For years, delivery services have been essential for grocery stores in New York City because many shoppers do not have vehicles to transport heavy bags of groceries. Since the start of the COVID-19 pandemic, the demand for online grocery delivery services has increased even further.

49.     To manage and track their grocery deliveries, GMI and Kings Logistics utilize a SaaS-based logistics application called Bringoz.

50.     Bringoz generates a link to the delivery orders and routes, which would be sent to the Delivery Drivers through the messaging application, WhatsApp.

51.     Upon information and belief, the delivery orders and customer addresses are acquired by and through GMI when customers place their orders on the NetCost Market website and are then entered into Bringoz to create the most efficient routes for Delivery Drivers.

**<u>Delivery Drivers Were Manual Workers</u>**

52.     As a Delivery Driver for Defendants, Mr. Horta spent at least 25% of his time engaged in physical labor, which included, but was not limited to, loading and unloading fifty-pound boxes of groceries in and out of minivans or SUVs, and carrying the groceries into homes or apartment buildings, many without elevator service.

53.     As such, Mr. Horta was a manual worker.

54.     Similar to Mr. Horta, all other Delivery Drivers employed by Defendants spent more than 25% of their time engaged in physical labor that included, but was not limited to, loading and unloading groceries in and out of vehicles.

55.     As such, Delivery Drivers are, like Mr. Horta, manual workers.

**Rates of Pay and Hours Worked**

56.     On or about August 5, 2020, Defendants hired Mr. Horta as a delivery driver for a flat rate of $130 per day, to be paid on a weekly basis.

57.     While Mr. Horta was generally paid on a weekly basis, Defendants frequently changed his pay date without warning, and sometimes paid bi-weekly instead of weekly.

58.     Essentially, Defendants paid Plaintiff whenever they felt like it.

59.     At all relevant times, upon information and belief, Defendants had a uniform practice of paying all its Delivery Drivers a flat daily rate, regardless of total hours worked.

60.     Upon information and belief, all Delivery Drivers were paid the same, or similar, flat daily rate – generally between $130 and $140 per day – regardless of total hours worked.

61.     In fact, during his employment with Defendants, Mr. Horta asked for a raise on four separate occasions and was refused each time.

62.     During his employment with Defendants, Mr. Horta's regularly scheduled shift was from 10:00 am until 8:00 pm; however, Mr. Horta frequently worked past 8:00 pm, often until 9:00 pm or 10:00 pm, in order to complete all of the grocery deliveries assigned to him during the second delivery window.

63.     As such, Mr. Horta regularly worked between 10 and 12 hours per day, resulting in an hourly rate of pay between $10.83 and $13 per hour which is well below the minimum wage in New York City of $15 per hour.

64.     For the first seven to eight months of his employment, Mr. Horta regularly worked six days per week – Sunday through Friday – averaging between 60 and 70 hours per week.

65.     Thereafter, Defendants reduced Mr. Horta's schedule to five days per week, which then averaged his weekly hours between 50 and 60 hours of work per week.

66.     At some point before his termination, Mr. Horta was once again regularly scheduled to work six days per week – once again averaging between 60 to 70 hours per week.

67.     When there were staff shortages and/or particularly busy weeks, Mr. Horta would be scheduled to work seven days, and during those weeks, he would work over 70 hours.

68.     In fact, there was one instance where Mr. Horta worked 14 days straight.

69.     During this 14-day period, Mr. Horta worked approximately 70 hours, or more, each week.

70.     Mr. Horta was never paid overtime premiums for overtime hours worked.

71.     Upon information and belief, Kings Logistics required all Delivery Drivers to regularly work the same schedule from 10:00 am to 8:00 pm because, as set forth above, the delivery windows provided to GMI customers was 11:00 am to 2:00 pm or 4:00 pm to 8:00 pm.

72.     Based on Mr. Horta's personal observations, all other Delivery Drivers were required to arrive at NetCost Market at 10:00 am to load their vehicles for their first delivery window (11:00 am to 2:00 pm), then return to the store to reload for the second delivery window (4:00 pm to 8:00 pm).

73.     Based on Mr. Horta's personal observations, all other Delivery Drivers worked until their last delivery was completed, which was frequently after 8:00 pm.

74.     Generally, Mr. Horta would be assigned more than 30 deliveries per day across New York City–from uptown to downtown Manhattan, all across Brooklyn and Queens, and at times even into Staten Island.

75.     Mr. Horta's manager, Mr. Kurun would sometimes assign Mr. Horta 14 to 16 deliveries as late as 3:30 pm to be picked up in Brooklyn and then delivered throughout Manhattan during the 4:00 pm to 8:00 pm delivery window; however, it was impossible to complete all these

deliveries by 8:00 pm, particularly given rush hour traffic, and Mr. Horta would consequently be required to work until 9:00 pm to 10:00pm to complete the assigned deliveries.

76.     Mr. Horta generally tried to avoid taking roads that required him to pay a toll because, as set forth below, Defendants did not reimburse for such out-of-pocket business expenses; however, this frequently made Mr. Horta's drive time significantly longer.

77.     In certain instances, when traffic was particularly bad between the outer boroughs and Manhattan, Mr. Horta had no choice but to take toll roads to try to complete his deliveries on time.

78.     During his employment with Defendants, Mr. Horta was not given time to take a lunch break. Rather, during the period when he would otherwise have a lunch break, he was expected to be driving back to a NetCost Market to pick up his afternoon deliveries and to load his vehicle.

79.     Upon information and belief, Defendants had a uniform policy of not providing any Delivery Drivers with a bona fide lunch break.

**Defendants' Failed to Reimburse Plaintiffs for Business Expenses**

80.     During his employment with Defendants, Mr. Horta regularly drove more than 100 miles a day in his own personal minivan.

81.     Mr. Horta was never reimbursed for any of the money he spent on gas to perform delivery services on behalf of Defendants.

82.     Upon information and belief, Defendants did not reimburse any Delivery Drivers for money expended on gas throughout their workday.

83.     Mr. Horta was never reimbursed for the tolls on the many bridges and/or tunnels in and around New York City which he paid as part of his job delivering groceries for Defendants.

84.     Upon information and belief, Defendants did not reimburse any Delivery Drivers for money expended on tolls throughout their workday.

85.     Mr. Horta was never reimbursed any money he spent on repairs to his vehicle resulting from its use for Defendants' business purposes.

86.     Specifically, during his employment with Defendants, Mr. Horta had to pay more than $2,000 for repairs to his vehicle due to wear and tear caused by the excessive driving he did on Defendants' behalf.

87.     Upon information and belief, it was the policy of Defendants not to provide reimbursement for repairs to vehicles owned by Delivery Drivers that resulted from use for Defendants' business purposes.

**Defendants Misappropriated Plaintiffs' Tips**

88.     Upon information and belief, Defendants collected gratuities through their website and/or mobile application that customers used to place their orders for grocery deliveries.

89.     Mr. Horta was often told by customers whom he delivered to that they had left a tip for him when they placed their order via the mobile application and/or website.

90.     On one occasion, Mr. Horta sent a text message within a group text chat with Defendant Khodjaev and others confronting Khodjaev about not being paid a tip that a customer explicitly told him was left for him.

91.     Specifically, Mr. Horta said "3029 Brighton customer says she left me a $10 tip but I never receive."

92.     Defendant Khodjaev responded by immediately calling Mr. Horta and instructing him to refrain from asking about tips via the group text chat.

93.     Despite this, during his employment with Defendants, Mr. Horta never received any gratuities that were paid by customers.

94.     Upon information and belief, it was Defendants' uniform policy to misappropriate tips paid by GMI customers that were intended for Delivery Drivers.

**Failure to Furnish Wage Statements and/or Wage Notices**

95.     During his employment with Defendants, Mr. Horta never received a wage statement or a wage notice, as required by the Wage Theft Prevention Act ("WTPA").

96.     Upon information and belief, it was Defendants' uniform policy to only provide a check, without any corresponding wage statement which, under the WTPA, must include: (1) employer's name, address, and phone number; (2) employee name; (3) dates covered by payment (pay period); (4) basis of payment (hourly, salary, commission, etc.); (5) rates paid (regular and overtime); (6) hours worked (regular and overtime); (7) allowances or credits applied against wages; (8) gross wages; (9) any deductions from wages; and (10) net wages.

97.     Until December 4, 2021, Defendants did not pay Mr. Horta for his last week of work which ended on November 8, 2021.

## COLLECTIVE ACTION ALLEGATIONS

98.     Mr. Horta brings FLSA claims on behalf of himself, and other individuals similarly situated, as authorized under 29 U.S.C. § 216(b).   The individuals similarly situated in the Collective are:

> **Proposed Collective:**  All person who are, or have been, employed by Defendants as Delivery Drivers in the United States within the period of the past three years prior to this action's filing date through the date of the final disposition of this action who worked over 40 hours in at least one workweek during the Collective Period and were not paid overtime premiums or were not provided any method or procedure for recording actual hours worked and whose gratuities were unlawfully

held by Defendants.

99.     Plaintiff incorporates by reference the facts alleged in each and every one of the preceding paragraphs.

100.    Defendants hired Mr. Horta and the Collective during the Collective Period.

101.    Plaintiff Hector Horta began working for Defendants on August 5, 2020, as a "Delivery Driver."

102.    All Delivery Drivers had common job descriptions and performed the same duties; namely, twice per day, for both the morning and afternoon/evening delivery windows, they reported to a NetCost Market to receive groceries, delivered the groceries throughout New York City.

103.    Upon information and belief, during his employment with Defendants, Mr. Horta knew of at least 20 or more other delivery drivers that were similarly situated.

**Defendants Common Timekeeping Policies**

104.    Defendants at all times, pursuant to commonly enforced policies and practices, failed to provide Delivery Drivers with any method or procedure for recording their actual hours worked.

105.    While Defendants required Delivery Drivers to utilize Bringoz routing software, which would provide a pre-determined estimate of the time it would take for Delivery Drivers to complete the entire route for the day, not inclusive of loading groceries into vehicles, Defendants disregarded such estimated time and the actual time that Delivery Drivers devoted to completing their job duties, and instead paid Delivery Drivers a flat daily rate per shift.

106.    However, Delivery Drivers were required to document each stop on their route with their smartphone application and documented any drop offs within the software.

107.    The smartphone application did not allow Delivery Drivers to input time estimates for loading the groceries, traveling from the pick-up location to the first stop on the route, or unloading groceries.

108.    Despite knowing that Delivery Drivers worked such hours in addition to those tracked in the routing software, Defendants failed to track any of these hours and instead paid only a flat daily rate, irrespective of total hours worked.

109.    Defendants did not provide Plaintiff and the Collective with pay statements or other documentation that reflected the ***actual*** number of hours they worked.

**Plaintiff and the Collective Worked in Excess of 40 Hours and in Excess of 10 Hours per Day**

110.    Mr. Horta's hours fluctuated on a week-to-week basis, depending on the number of grocery deliveries he was assigned on a given day and the distances required to travel for each.

111.    Plaintiff and the Collective worked in excess of 40 hours per week every week, for which they were not paid overtime premiums.

112.    It was estimated by Defendants that deliveries would take anywhere between 10 to 13 hours per day to complete, inclusive of time spent loading the groceries and driving to the first delivery stop.

113.    As such, in general, the total amount of working hours for each shift averaged about 10 to 13 hours.

114.    Thus, any week a Delivery Driver completed more than 4 shifts, he or she would have worked more than 40 hours that workweek.

115.    For example, Mr. Horta worked 6 days a week for the first 7 months he was employed by Defendants. If Mr. Horta completed his work in 10 hours each day, which was

infrequent, he would have worked for 60 hours that week without being paid any overtime premiums for overtime hours worked.

116.    As such, during this period Mr. Horta estimates that he worked approximately 20 hours of overtime each week that were not compensated at 1 ½ times his regular rate of pay.

117.    Plaintiff and the Collective regularly worked more than 10 hours in the day and were not provided 1 hour of additional pay at the New York minimum wage (referred to as "spread of hours pay").

**Defendants Common Compensation Policies**

118.    Pursuant to a common compensation scheme, Defendants compensated Delivery Drivers a flat rate per routes performed in a given pay period.

119.    Upon information and belief, the flat rate of pay for Delivery Drivers was between $130 to $140 per day.

120.    Pursuant to a common policy, all Delivery Drivers were misclassified by Defendants as independent contractors; thus, Defendants failed to properly pay minimum wage and overtime premiums, took unlawful deductions from pay, failed to provide wage notices and statements, and misappropriated tips.

121.    Delivery Drivers were not compensated for gas or repairs for their vehicles which they provided and maintained.

122.    Mr. Horta was not compensated for repairs to his vehicle while his vehicle was primarily being used for Defendants' business purposes.

123.    While he was employed by Defendants, Mr. Horta paid approximately $2,500 dollars for repairs to his vehicle.

124.    Mr. Horta paid an average of $20-40 per day for gas used for business purposes

only, resulting in a deduction by separate transaction from his daily compensation.

125.     Upon information and belief, it was a common policy of Defendants to deduct for business expenses by separate transaction.

126.     Defendants did not provide Delivery Drivers with wage statements that provided a breakdown of the compensation they received, including their rate of pay or the number of hours worked per pay period.

127.     Defendants did not provide Delivery Drivers with a wage notice upon hiring.

128.     Upon information and belief, it was a common policy of Defendants to not provide wage notices or wage statements.

129.     Mr. Horta received gratuities from GMI customers for his deliveries through electronic means, but Defendants unlawfully withheld these gratuities.

130.     Upon information and belief, it was a common policy of Defendants to not pay Delivery Drivers any gratuities intended for Delivery Drivers given by customers through the internet-based application.

## <u>RULE 23 CLASS ALLEGATIONS</u>

131.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

Proposed Classes:     1. **<u>NYLL Overtime Class</u>**: All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period **_and_** who during at least one workweek were subject to Defendants' common policy and practice of failing to pay overtime premium for hours worked above 40 in a workweek in violation of the NYLL.

2. **<u>NYLL Minimum Wage Class</u>**: All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the

date of the final disposition of this action who worked at least one workweek during the Class Period **_and_** who during at least one workweek were subject to Defendants' common policy and practice of failing to pay the lawful minimum wage for all hours worked in violation of the NYLL.

**3. <u>NYLL Deduction Class</u>**: All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period **_and_** were subject to Defendants' common policy of failing to compensate business expenses in the care and maintenance of delivery vehicles provided by the delivery drivers.

**4. <u>NYLL Spread of Hours Class:</u>** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period **_and_** who during at least one workweek were subject to Defendants' common policy and practice of failing to pay spread of hours pay on days in which Delivery Drivers worked ten or more hours in a single day in violation of the NYLL.

**5. <u>NYLL WTPA Class:</u>** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period **_and_** were subject to Defendants common policy and practice of not providing lawful wage statements and/or wage notices in violation of the NYLL.

**6. <u>NYLL Tip Misappropriation Class:</u>** All persons who are or have been employed by Defendants as Delivery Drivers in New York within the period of six years prior to this action's filing date through the date of the final disposition of this action who worked at least one workweek during the Class Period **_and_** were subject to Defendants common policy of unlawfully withholding gratuities.

132.    Plaintiffs incorporate by reference the facts alleged in each and every one of the preceding paragraphs.

133.   <u>Numerosity</u>: The Proposed Classes are so numerous that joinder of all members is impracticable.  "There is no 'mechanical test' to determine whether ... numerosity has been met nor is there a set rule for the number of prospective class members which must exist before a class is certified." *Globe Surgical Supply v. GEICO Ins. Co.*, 59 A.D.3d 129, 137-38 (2008); *see also Koss v. Wackenhut Corp.*, 03 CIV. 7679(SCR), 2009 WL 928087, *3(S.D.N.Y. Mar. 30, 2009) (citations omitted). As such, the courts will certify classes under circumstances such as this where the class size is approximately twenty members. *See Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certified a settlement class of sixteen individuals, finding that while joinder is not impossible, it was nonetheless improbable); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (found numerosity for a class of 28 people); *Gortat v. Capala Bros.*, 949 F.Supp.2d 374, 383 (E.D.N.Y. 2013) (numerosity satisfied where class consisted of 24 day laborers).

134.   Plaintiff is informed and believes, and on that basis, alleges, that during the relevant time period, Defendants employed ***at least*** 20 individuals who satisfy the definition of the Proposed Classes, but likely upwards of 40 individuals throughout the entire Rule 23 Class Period.

135.   <u>Typicality</u>: Plaintiff's claims are typical of the members of the Proposed Classes. Plaintiff is informed by other Delivery Drivers that the putative Class were subject to the same aforementioned unlawful policies during the Class Period. Plaintiff and Delivery Drivers were compensated in the same manner. Plaintiff and Delivery Drivers were subject to Defendants' unlawful policies and practices alleged more fully above.

136.   <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

137.   <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Proposed Classes and has retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

138.   <u>Commonality</u>: Common questions of law and fact exist to all members of the Proposed Classes and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to:

   a.   Whether members of the Proposed Classes were required to work under Defendants' direction and control;

   b.   Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the NYLL Overtime Class in violation of the NYLL;

   c.   Whether Defendants unlawfully failed to pay the appropriate minimum wage for all hours worked to members of the NYLL Minimum Wage Class in violation of the NYLL;

   d.   Whether Defendants failed to compensate, and therefore took deductions from pay, directly or indirectly, for business-related expenses from the proposed NYLL Deduction Class members' pay in violation of the NYLL;

   e.   Whether Defendants unlawfully failed to pay spread of hours pay to members of the NYLL Spread of Hours Class in violation of the NYLL;

   f.   Whether Defendants unlawfully misappropriated tips from members of the NYLL Tip Misappropriation Class in violation of the NYLL;

   g.   Whether Defendants failed to provide proper WTPA wage notices and wage statements to the NYLL WTPA Class members in violation of the NYLL;

h.   Whether Defendants maintained lawful wage and hour records under the NYLL;

and

i.   Whether Defendants' actions were "willful" under the NYLL.

139.   This case is maintainable as a class action under Rule 23 because prosecution of actions by or against individual members of the classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

140.   Class certification is also appropriate under Rule 23 because questions of law and fact common to the proposed Classes predominate over any questions affecting only individual members of the proposed Classes and because a class action is superior to other available methods for their fair and efficient adjudication of this litigation.

141.   Defendants' uniform policies and practices denied the proposed Classes the wages to which they are entitled to, including overtime pay and spread of hours pay. The damages suffered by the individual members of the proposed Classes are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior, because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

142.   Mr. Horta intends to send notice to all members of the proposed Classes to the extent required by Rule 23. The names and addresses of the members of the proposed Classes will be available from Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Fair Labor Standards Act: Unpaid Overtime Wages)

143.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

144.    Mr. Horta consents in writing to be a part of this action. Mr. Horta's written consent form is filed contemporaneously on the Court's docket with this Action. Plaintiff Horta anticipates that as this case proceeds, other individuals will sign consent forms and join as party plaintiffs under the FLSA.

145.    At all relevant times, each of the Defendants constitute Plaintiff and the members of the proposed Collective's "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

146.    At all relevant times herein, Plaintiff and the members of the proposed Collective have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

147.    At all relevant times, Plaintiff and putative Collective are "employees," within the meaning contemplated by the FLSA.

148.    At all relevant times, upon information and belief, Defendants' gross revenue has exceeded $500,000.00.

149.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1 ½ times the regular rate of pay for work performed in excess of 40 hours per workweek.

150.    During their employment with Defendants, within the applicable statute of limitations, Plaintiff and other members of the Collective sometimes worked in excess of 40 hours per workweek without overtime compensation.

151.    Despite the hours worked by Plaintiff and the Collective, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them overtime compensation.

152.    Based on the policies and practices articulated above, Plaintiff and the members of the Collective were uniformly denied FLSA mandated overtime premiums.

153.    Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

154.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §§ 216(b) and 255(a).

155.    Because Defendants' violations of the FLSA are willful, a three-year statute of limitation applies. 29 U.S.C. § 255.

156.    Plaintiff, on behalf of himself and the Collective, seeks recovery of unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest under the FLSA.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(New York Labor Law: Unpaid Overtime Wages)**

157.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

158.    At all relevant times herein, Plaintiff and the proposed NYLL Overtime Class Members have been entitled to the rights, protections, and benefits provided under the NYLL.

159.    At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

160.   At all relevant times herein, Plaintiff and putative Class Members have been "employees," within the meaning of the NYLL.

161.   The overtime wage provisions of Article 19 of the NYLL, and its supporting regulations, apply to Defendants.

162.   Defendants have failed to pay Plaintiff and the putative NYLL Overtime Class the overtime wages they are entitled to under the NYLL.

163.   By Defendants' failure to pay Plaintiff and the putative NYLL Overtime Class premium overtime wages for hours worked in excess of 40 hours per week, they have willfully, within the meaning of NYLL § 663, violated NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 142.

164.   Due to Defendant's violation of the NYLL, Plaintiff and the NYLL Overtime Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (New York Labor Law: Failure to Pay Spread of Hours)

165.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

166.   At all relevant times herein, Plaintiff and the members of the putative NYLL Spread of Hours Class have been entitled to the rights, protections, and benefits provided under the NYLL.

167.   At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

168.   At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

169.   Plaintiff and the NYLL Spread of Hours Class members regularly had workdays that lasted more than 10 hours in a single day.

170.   Defendants willfully and intentionally failed to compensate Plaintiff and the NYLL Spread of Hours Class 1 hour pay at the New York minimum hourly wage rate when their workdays exceeded ten 10 hours, as required by New York law.

171.   As a result of Defendants willful and unlawful conduct, Plaintiff and members of the NYLL Spread of Hours Class are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(New York Labor Law: Unlawful Wage Deductions)**

172.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

173.   At all relevant times herein, Plaintiff and the members of the putative NYLL Deduction Class have been entitled to the rights, protections, and benefits provided under the NYLL.

174.   At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

175.   At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

176.   The provisions of Article 19 of the NYLL and its supporting regulations related to the failure to reimburse business-related expenses apply to Defendants.

177.   Section 193 prohibits deductions from employees' wages unless the deductions are expressly authorized and for the benefit of the employee and limited to the enumerated categories

of permissible deductions.

178.  Defendants unlawfully required that Plaintiff and the NYLL Deduction Class bear the expenses of their employment, including, but not limited to, the cost of their gas and vehicle repairs, in violation of NYLL §§ 193 and 198(b).

179.  As a result of Defendants' unlawful conduct, Plaintiff and the putative NYLL Deduction Class are entitled to an award of damages equal to all wages unlawfully deducted and all unlawful payments required by separate transaction, in an amount to be determined at trial, plus pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (New York Labor Law: Failure to Furnish Accurate Wage Statements)

180.  Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

181.  At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

182.  At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

183.  At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

184.  The record-keeping provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

185.  Defendants did not provide Plaintiff and the putative NYLL WTPA Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

186.  NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated information required under the NYLL.

187.   As a result of Defendants' unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198,  up to $5,000 per Class Member, plus costs and attorneys' fees, as provided by NYLL § 663.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(New York Labor Law: Failure to Furnish Wage Notices)**

188.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

189.   At all relevant times, Plaintiff and the members of the putative NYLL WTPA Class have been entitled to the rights, protections, and benefits provided under the NYLL.

190.   At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

191.   At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

192.   The record-keeping provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

193.   Defendants did not provide Plaintiff and the NYLL WTPA Class with wage notices at the start of their employment, as required by NYLL § 195.

194.   NYLL §195 requires that employers furnish employees with wage notices containing accurate, specifically enumerated information required under the NYLL.

195.   As a result of Defendant's unlawful conduct, Plaintiff and the putative NYLL WTPA Class are entitled to an award of damages pursuant to NYLL § 198, up to $5,000 per Class Member, plus costs and attorneys' fees, as provided by NYLL § 663,

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (New York Labor Law: Unlawful Withholding of Gratuities)

196.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs.

197.    The provisions of NYLL Articles 6 and 19, and the supporting New York State Department of Labor regulations, apply to Defendants and protect Plaintiff and members of the putative class.

198.    At all relevant times herein, each of the Defendants have been Plaintiff and the putative Classes' "employer" within the meaning of the NYLL.

199.    At all relevant times herein, Plaintiff and putative class members have been "employees," within the meaning of the NYLL.

200.    Pursuant to NYLL Article 6 § 196-d, and the supporting New York State Department of Labor Regulations, "No employer or her agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

201.    Defendants unlawfully withheld and retained portions of gratuities provided to Delivery Drivers, including but not limited to those collected through the internet-based food delivery application provided to GMI customers when they ordered groceries.

202.    Defendants allowed its customers to believe that the gratuities given through the delivery application were given to the Delivery Drivers; however, upon information and belief, Defendants retained the gratuities for themselves.

203.    Defendants violated § 196-d by a) collecting gratuities from customers; b) failing to distribute the gratuities to the Delivery Drivers, and upon information and belief, retaining the

gratuities for themselves; and c) representing or allowing customers to believe that the gratuities were given to the Delivery Drivers.

204.   Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of applicable New York State law by failing to maintain proper and complete records of service charges in the nature of gratuities, as required under 12 NYCRR § 146-2.

205.   By the foregoing reasons, Defendants have violated NYLL Article 6 § 196-d, triggering NYLL Article 6 § 198, and are liable to Plaintiff and putative class members in an amount to be determined at trial, plus interest, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all members of the Proposed Collective and Classes, prays for relief as follows:

A.   That the Court determine that this action may proceed as a collective action pursuant to FLSA and a class action pursuant to Rule 23;

B.   That the Court determine that Plaintiff's counsel and Plaintiff Hector Horta can adequately represent the interests of the class as class counsel and class representative, respectively;

C.   That the Court declare that Defendants have violated the Fair Labor Standards Act as to Plaintiff Horta and the putative Collective;

D.   That the Court declare that the Defendants have violated the provisions of the New York Labor Law as to Plaintiff Horta and putative Classes;

E.   That the Court declare that Defendants' violations as described above are found to be willful;

F.      That the Court award Plaintiff Horta and the putative Collective and Classes for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

G.      That the Court award reasonable attorney's fees and costs pursuant to the FLSA, NYLL and/or other applicable law;

H.      That the Court enjoin Defendants to cease and desist from unlawful activities in violation of the FLSA and the NYLL; and

I.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff on behalf of himself and all other similarly situated persons demands a trial by jury as to all issues so triable.

DATED:      May 2, 2022
            New York, New York

Rachel M. Haskell, Esq.
Nicolas Bittner, Esq.
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004
(646)-430-7930 (main)
(646)-349-2504 (fax)

*Counsel for Plaintiff and the Putative Collective and Class(es)*

30