UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
HECTOR HORTA, individually and on behalf of others similarly situated,[1]

                           Plaintiff,

                -against-

KINGS LOGISTICS, L.L.C., GRAND MARKET INTERNATIONAL CORP., and SAIDABROR KHODJAEV, in his professional and individual capacities,

                          Defendants.
------------------------------------------------------------- X

**REPORT AND RECOMMENDATION**

22 Civ. 2508 (MKB) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

       Plaintiff Hector Horta ("Plaintiff") commenced this action against Kings Logistics, L.L.C. ("Kings Logistics"); Grand Market International Corp. ("Grand Market"); and Saidabror Khodjaev ("Mr. Khodjaev" and, collectively with Kings Logistics and Grand Market, "Defendants"), asserting claims for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (the "FLSA"), and the New York Labor Law, N.Y. Lab. Law §§ 1 et seq. ("NYLL"). See generally id. Upon receiving notification from Plaintiff and Grand Market that they had reached a settlement, see Letter, ECF No. 20, the Court scheduled a hearing pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). In anticipation of the hearing, Plaintiff and Grand Market filed a motion for settlement approval. See Mot. for Settlement Approval, ECF No. 24. During the hearing, the Court identified certain issues with the original settlement agreement. Plaintiff and Grand Market submitted a revised motion for settlement

---

[1] This action purports to be a class action and a collective action, see Compl., ECF No. 1 at 13-21, but Plaintiff did not pursue any certification motion practice.

1

approval in response to the Court's concerns. See Revised Mot. for Settlement Approval, ECF No. 26.

The revised settlement agreement (the "Revised Agreement") provides for a total settlement amount of $13,500.00, to be paid by Grand Market within thirty days of approval of the Revised Agreement by the Court, with $8,055.37 to be paid to Plaintiff and with $5,444.63 to be paid to Plaintiff's counsel for attorneys' fees and costs. See ECF No. 26-1 at 2-3. In exchange, pursuant to the Revised Agreement, Plaintiff would release his claims. See id. at 4.

## I. LEGAL STANDARD

Rule 41(a)(1)(A) provides:

> Subject to Rules 23(e), 23.1(c), 23.2 and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A). "Dismissal under either Rule 41(a)(1)(A) approach requires no court action to be effective." Samake v. Thunder Lube, Inc., 24 F.4th 804, 809 (2d Cir. 2022) (citation & footnote omitted). In Cheeks, however, the Court of Appeals for the Second Circuit held that the FLSA falls within the "applicable federal statute" exception in Rule 41(a)(1)(A); as a result, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." Cheeks, 796 F.3d 199 at 206 (reasoning that "[r]equiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose"). The Second Circuit subsequently expanded the holding of Cheeks to both unilateral and stipulated dismissals pursuant to Rule 41(a)(1)(A). See Samake, 24 F.4th at 810 (holding that "the same result [as in Cheeks] is warranted when the dismissal is effected unilaterally under

2

Rule 41(a)(1)(A)(i) as when dismissal is effected by stipulation of all parties under (A)(ii)"). It also expanded the Cheeks holding to encompass dismissals both with and without prejudice pursuant to Rule 41(a)(1)(A). See id. (reasoning that "the logic of Cheeks as applied to Rule 41(a)(1)(A)(ii) dismissals with prejudice applies equally to Rule 41(a)(1)(A)(i) dismissals without prejudice"). Upon the filing of a notice of dismissal pursuant to Rule 41(a)(1)(A) in an action in which an FLSA claim has been asserted, the court must inquire "as to the existence of any FLSA settlement." Id. at 811. If an FLSA settlement does not exist, the court should so-order the notice of dismissal. Id. By contrast, if an FLSA settlement exists, the court should engage in a Cheeks review. Id.

## II. DISCUSSION

### A. The Court Respectfully Recommends Approval Of The Revised Agreement Between Plaintiff And Grand Market Pursuant To Cheeks Only Upon Removal Of The Non-assistance and Non-publication Provisions.

Grand Market reached an FLSA settlement agreement with Plaintiff, necessitating a Cheeks review. In conducting a Cheeks review, courts address (1) whether a settlement agreement is fair and reasonable, in view of the factors set forth in Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012); (2) whether the attorneys' fees and costs sought are reasonable; and (3) whether a settlement agreement runs afoul of any of the Cheeks concerns. Because the non-assistance provision at paragraph 2(g) and the non-publication provision at paragraph 3 of the Revised Agreement run afoul of Cheeks, the undersigned respectfully recommends that the District Court approve the Revised Agreement only upon removal of such provisions.

### i. The <u>Wolinsky</u> Factors Favor Approval Of The Revised Agreement.

When conducting a <u>Cheeks</u> review, the reviewing court must answer "[t]he ultimate question" of "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." <u>Wolinsky</u>, 900 F. Supp. at 335 (quotations & citations omitted). In doing so, the reviewing court is guided by the <u>Wolinsky</u> factors, which, here, weigh in favor of approving the Revised Agreement pursuant to <u>Cheeks</u>, with the exception of the two paragraphs noted above.

The first factor is "the plaintiff's range of possible recovery." <u>Id.</u> (citations omitted). Plaintiff's estimated maximum possible recovery in this action, against Grand Market, is $30,180, if the legal and factual claims, described as follows, were resolved in Plaintiff's favor; this estimate accounts for alleged "unpaid overtime, minimum wage, and spread of hours pay" but excludes "liquidated damages, pay statement and notice violations, unlawful deductions, and misappropriation of tips." Mot. for Settlement Approval, ECF No. 24 at 3. The settlement amount is $13,500, with Plaintiff to receive $8,055.37 after the deduction of attorneys' fees and costs, <u>see id.</u> at 2-3, amounting to approximately 27 percent of Plaintiff's estimated maximum theoretical recovery. See id. at 2-3. This is a moderate percentage of Plaintiff's alleged possible recovery from Grand Market. Plaintiff concedes that his ability "to recover all of his alleged damages in full, especially against" Grand Market, "is very unlikely," in view of "[t]ext messages between Plaintiff and his supervisor . . . strongly indicat[ing] that Plaintiff may have been properly classified as in independent contractor, working exclusively for Kings Logistics and/or [Mr.] Khodjaev, rather than" Grand Market. ECF No. 24 at 3. Further, Plaintiff confirmed that receipt of $8,055.37 is acceptable to him on the record. Conference (asked by the Court whether receipt of $8,055.37 is "acceptable to you," to which Plaintiff stated "yes").

4

As to the excluded categories of damages, Plaintiff and Grand Market excluded alleged "unlawful deductions and misappropriation of tips because, without receiving discovery from Kings Logistics, estimations of those damages are highly speculative and vary greatly depending on what assumptions are made" and because "tips were made via an application administered by Kings Logistics without [Grand Market's] . . . involvement." Id. at 3, n.1; see Shum v. Jili Inc., No. 17 Civ. 7600 (RPK) (VMS), 2023 WL 2974902, at *9, n.18, *12 (E.D.N.Y. Mar. 19, 2023) (noting "that the FLSA prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage," such that, "[u]nder the FLSA, a plaintiff can bring a claim for tip misappropriation to the extent that the misappropriation of the tips leaves the plaintiff with hourly wages in an amount less than the minimum wage" (citations & quotations omitted)), report & recommendation adopted, No. 17 Civ. 7600, 5/9/2023 Order. Plaintiff and Grand Market do not explain the exclusion of liquidated damages and damages for pay-statement-and-notice violations, but from the record, the Court understands these to be reasonable exclusions. As to the exclusion of liquidated damages, it would be a reasonable compromise for Plaintiff to accept half of his possibly viable claims by essentially splitting the litigation risk with Grand Market by accepting payment of alleged back wages but foregoing the possibility of liquidated damages given the litigation risks discussed, infra. As to the alleged pay-statement-and-notice violations, to the extent Plaintiff was an independent contractor as to Grand Market, Grand Market would not have been required to prepare, issue or maintain such documents, and Plaintiff would not have a claim against Grand Market. If Grand Market had any such responsibilities, it may be possible that such claims would be subject to a standing challenge, reducing the value Plaintiff alleges. See, e.g., Sevilla v. House of Salads One LLC, No. 20 Civ. 6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (citations

5

omitted); Wang v. XBB, Inc., No. 18 Civ. 7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) (citations omitted); Francisco v. NY Tex Care, Inc., No. 19 Civ. 1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (citations omitted).

The second factor is "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." Wolinsky, 900 F. Supp. 2d at 335 (quotations & citations omitted). At this juncture, Plaintiff and Grand Market "are very much in the beginning phases of litigation and have yet to accrue substantial litigation costs, which they would certainly accrue if this case were to proceed to class action litigation, full discovery, depositions, motion practice, and a trial." Mot. for Settlement Approval, ECF No. 24 at 4. Through the Revised Agreement, Plaintiff would "receive immediate payment and relief." Id. There is no evidence in the record, other than the complaint, see Compl., ECF No. 1 at 13-21, that suggests there are any viable class claims here.

As to the third factor, which is "the seriousness of the litigation risks faced by the parties," Wolinsky, 900 F. Supp. 2d at 335 (citations omitted), according to counsel, proceeding with this action raises "the uncertainty of extended litigation," the risk of an adverse determination as to whether Grand Market was even Plaintiff's employer, and "the significant risk of a determination that Plaintiff is an independent contractor not entitled to any relief under the FLSA or NYLL." Mot. for Settlement Approval, ECF No. 24 at 4. The Revised Agreement allows Plaintiff and Grand Market "to completely eliminate this risk . . . , particularly where a determination of Plaintiff's status as an employee or independent contractor, or [Grand Market's] . . . status as a joint employer, would potentially yield an all or nothing outcome," id., at least as to whether any liability could be imposed on Grand Market. Plaintiff thus faces a serious litigation risk.

6

The fourth factor is "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel," Wolinsky, 900 F. Supp. 2d at 335 (quotations & citations omitted). According to counsel, the Revised Agreement is the product of "good faith, arm's-length negotiations" between Plaintiff's counsel, who "almost exclusively practices plaintiff-side labor and employment law and specializes in wage[-]and[-]hour individual and class actions," and Grand Market's counsel, who "regularly represents employers in labor and employment law matters, including wage[-]and[-]hour actions." Mot. for Settlement Approval, ECF No. 24 at 4. There is no indicia in the record otherwise.

The final factor is the possibility of fraud or collusion. See Wolinsky, 900 F. Supp. 2d at 335 (citations omitted). There is no indicia of fraud or collusion present. Plaintiff and Grand Market were "represented by counsel experienced in wage[-]and[-]hour law who duly counseled their respective clients throughout the negotiations on the benefits and risks of continued litigation" and "were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case." Mot. for Settlement Approval, ECF No. 24 at 5. As "Plaintiff has not performed any services for any Defendant since prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace." Id.

### ii.     The Attorneys' Fees And Costs Sought Are Reasonable.

A reviewing court must also assess the reasonableness of attorneys' fees and costs where applicable. See Fisher v. SD Protection Inc., 948 F.3d 593, 600 (2d Cir. 2020) (citations omitted).

Plaintiff's counsel's costs of $1,416.95, or the sum of the filing fee and fees for service of process, see Mot. for Settlement Approval, ECF No. 24-2, and attorneys' fees of $4,027.68, or

7

one-third of the settlement amount, less costs, see Mot. for Settlement Approval, ECF No. 24 at 5, are reasonable.  The Court notes that these costs also relate to the non-appearing Defendants, but, as Plaintiff is responsible for these costs, see id. (stating that "Plaintiff agreed that the Firm would represent him on a contingency basis and that the Firm would retain 33.33% of any gross recovery, plus the costs and disbursements incurred by the Firm," such that Plaintiff's counsel is entitled to an award of "costs ($1,416.95) . . . and 33.33% of the gross recovery after costs ($12,083.05)," or $4,027.68), it is reasonable to pay them from this settlement.  The Court notes that although Plaintiff was responsible for the costs from his recovery, the settlement takes the costs off the top of the settlement total, then allocates the settlement one-third to counsel and two-thirds to Plaintiff.  As this calculation works to Plaintiff's benefit, the Court does not find the difference between the retainer and the settlement to be problematic.  Plaintiff's counsel presented that counsel expended $7,329 in attorneys' fees in this action, see Mot. for Settlement Approval, ECF No. 24-3, such that the lodestar far exceeds the fees payment to Plaintiff's counsel.  The proposed fees and costs are reasonable.

### iii.     The Cheeks Concerns Warrant Modification Of The Revised Agreement.

A reviewing court must ensure that the settlement agreement does not run afoul of any of the Cheeks concerns, which include, inter alia, highly restrictive confidentiality provisions, overbroad releases, unsupported attorneys' fee awards, and restrictions on attorneys' future representations.  See Cheeks, 796 F.3d at 206 (citations omitted).  Three provisions in the Revised Agreement, namely the non-assistance provision, the non-publication provision, and the mutual non-disparagement provision, implicate confidentiality concerns and require further review.  Upon consideration, the Court respectfully recommends that the Revised Agreement not be approved with paragraphs 2(g) and 3.

a.  **Non-Assistance Provision**

Paragraph 2(g) of the Revised Agreement provides, in pertinent part:

> Plaintiff further agrees, to the extent permitted by law, that neither he nor any person acting by, through under, or in concert with him, will initiate, encourage, assist, or participate in any Proceeding, unless lawfully subpoenaed or otherwise ordered to do so by a court or administrative agency in connection with any investigation it is conducting or as otherwise required by applicable law, concerning any of the claims and/or causes of action released in Section 2 of this Agreement.

Revised Mot. for Settlement Approval, ECF No. 26-1 at 5. This provision would effectively gag Plaintiff from discussing his case, even in a lawful legal proceeding. Plaintiff and Grand Market do not offer any argument or authority supporting inclusion of this provision in the Revised Agreement but rather focus their revised motion for settlement approval on the non-publication provision discussed below. See, infra, Sec. II(B)(iii)(b); see generally Revised Mot. for Settlement Approval, ECF No. 26.[2]

Courts in this Circuit have found that provisions similar to paragraph 2(g) of the Revised Agreement are impermissible pursuant to Cheeks. See, e.g., Ortiz v. My Belly's Playlist LLC, 283 F. Supp. 3d 125, 126-27 (S.D.N.Y. 2017) (reasoning that a provision containing "an understanding by the plaintiff not to participate or assist in any other wage and hour litigation against defendant" was impermissible pursuant to Cheeks and denying the motion to approve the settlement agreement (citations omitted)); Yunda v. SAFI-G, Inc., 15 Civ. 8861 (HBP), 2017 WL 1608898, at *4 (S.D.N.Y. Apr. 28, 2017) (finding that a provision in which the plaintiff "waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding

---

[2] Plaintiff and Grand Market attach a portion of a settlement agreement approved by Magistrate Judge Marcia M. Henry containing a similar provision but do not cite it for that purpose. See Revised Mot. for Settlement Approval, ECF Nos. 26 at 3, 26-3.

9

against any Releasee under the FLSA" was permissible but reasoning, in dicta, that a provision in which the plaintiff would "waive his right to assist, aid, encourage, facilitate or cooperate in such a proceeding against defendants" would be impermissible (citations & quotations omitted)); Bao Cheng Fu v. Mee May Corp., 15 Civ. 4549 (HBP), 2017 WL 2172910, at *2 (S.D.N.Y. Mar. 31, 2017) (reasoning that a provision prohibiting the plaintiffs from, "in any way, voluntarily assist[ing] any individual or entity in commencing or prosecuting any action or proceeding against Defendants . . . or in any way voluntarily participat[ing] or cooperat[ing] in any such action or proceeding . . . is contrary to the remedial purposes of the [FLSA] statute" (citations & quotations omitted)); Lopez v. Ploy Dee, Inc., 15 Civ. 647, 2016 WL 3637103, at *1 (S.D.N.Y. June 29, 2016) (instructing that, in order to obtain approval of a settlement agreement, the parties had to remove, narrow, or submit argument as to the fairness and reasonableness of a provision providing that the "[p]laintiff will not directly or indirectly encourage, induce, solicit or assist anyone to file a wage and hour action or collective or class action against Defendants" (citation & quotations omitted))[3]; Souza v. 65 St. Marks Bistro, 15 Civ. 327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (rejecting a provision in a settlement agreement in which the plaintiffs "agree[d] not to provide assistance to any third party with respect to any litigation, arbitration and/or civil action in which the Defendants could be implicated or discussed in any way, unless pursuant to subpoena or other compulsory legal process" (citation & quotations omitted)). The provision runs contrary to the spirit of Cheeks, which encouraged free discussion of FLSA rights and violations. Paragraph 2(g) of the Revised Agreement runs afoul of Cheeks and precludes approval of the Revised Agreement in its current form.

---

[3] In Lopez, the parties submitted a revised settlement agreement, in which this provision was removed, and the Lopez Court approved the settlement agreement. See Lopez v. Ploy Dee, Inc., 15 Civ. 647 (AJN), 2016 WL 4097805, at *1 (S.D.N.Y. July 21, 2016) (citation omitted).

10

b.      **Non-publication Provision**

Paragraph 3 of the Revised Agreement provides:

> Plaintiff agrees that he will not affirmatively by his own initiative publicize the terms of this Settlement Agreement, which includes notifying any member of the media regarding the terms and conditions of the Settlement Payment or Agreement and posting or disseminating the terms and conditions of the Settlement Payment or Agreement on any social media (including, but not limited to, Facebook, Twitter, Instagram, Law 360, or similar outlets).  Dissemination of this Agreement and the terms set forth herein shall be limited to filing documents with the Court, as is necessary to effectuate the Agreement, as may be required by law or governmental agency, for tax purposes, or pursuant to subpoena or court order.  Nothing in this Section 3 shall prohibit the Parties from speaking truthfully about their claims and/or defenses, under the FLSA or NYLL, or the resolution thereof.  Further, nothing in this Section 3 shall prevent the Parties from filing the executed Settlement Agreement with the Court for approval or the Court from filing the resolution of those claims.

Revised Mot. for Settlement Approval, ECF No. 26-1 at 5-6.  In support of retaining this provision, Plaintiff and Grand Market offer the purported "line of authority" providing that a provision that prohibits "a plaintiff from affirmatively broadcasting information regarding the settlement [is] . . . permissible, so long as [it does] . . . not constitute a blanket confidentiality provision" such that disclosure is altogether prohibited.  Revised Mot. for Settlement Approval, ECF No. 26 at 1-2.  The "line of authority" relied upon by Plaintiff and Grand Market from which this legal proposition purportedly arises does not support, or even address, this proposition.

Plaintiff and Grand Market first cite Zelidon v. Staubitz Meat Market, Inc., 21 Civ. 476 (EK) (LB), 2021 WL 4942950 (E.D.N.Y. Sept. 14, 2021), report & recommendation adopted, 2021 WL 4942800 (Oct. 21, 2021), for its statement that "certain provisions within a settlement agreement are unacceptable when subjected to judicial review," including "restrictive confidentiality provisions." Id., at *1 (citations omitted).  This general statement of the law, as provided by the Zelidon Court, is certainly correct, but it does not support the proposition for

11

which Plaintiff and Grand Market cite it, namely that confidentiality provisions prohibiting publication of settlement information are permissible if they do not otherwise prevent disclosure of such information wholesale. See Revised Mot. for Settlement Approval, ECF No. 26 at 1-2. No confidentiality provision, let alone a non-publication provision, was in issue in Zelidon; the Zelidon Court noted that "[t]he instant settlement agreement does not contain any such clause." Zelidon, 2021 WL 4942950, at *4.

Plaintiff and Grand Market next cite Lazaro-Garcia v. Sengupta Food Servs., 15 Civ. 4259 (RA), 2015 WL 9162701 (S.D.N.Y. Dec. 15, 2015), for its statement that settlement agreements "must include a carve-out for truthful statements about plaintiffs' experience litigating their case." Revised Mot. for Settlement Approval, ECF No. 26 at 2 (quotations omitted). The complete statement made by the Lazaro-Garcia Court, however, is that, "[a]lthough not all non-disparagement clauses are per se objectionable, if the provision would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case." Lazara-Garcia, 2015 WL 9162701, at *3 (citation & quotations omitted). This statement of the law does not support and is inapplicable to the legal proposition offered by Plaintiff and Grand Market as to the permissibility of non-publication provisions, given (1) that the statement in Lazara-Garcia pertains to non-disparagement clauses and (2) that, in this case, the purported carveout in the non-publication provision allowing Plaintiff and Grand Market to make truthful statements about their experiences litigating this case does not permit the "affirmative" publication of any such truthful statements and therefore does not serve as a carveout, as conceded by Plaintiff and Grand Market, see Revised Mot. for Settlement Approval, ECF No. 26 at 3 (stating that, here, the non-publication provision prohibits Plaintiff from "affirmatively contacting the media or

12

affirmatively posting on social media" but does not prevent Plaintiff from "making statements of fact in response to inquiries"). Furthermore, in Lazaro-Garcia, the parties had already "agreed to strike the confidentiality provisions of the agreement," such that the permissibility of a general confidentiality provision or a more specific non-publication provision was not before the Lazaro-Garcia Court. Id., at *1 (citation & quotations omitted).

Plaintiff and Grand Market argue that a non-publication provision is permissible so long as wholesale disclosure is not prohibited. See Revised Mot. for Settlement Approval, ECF No. 26 at 1-2. They cite Torres v. McGowan Builders, 18 Civ. 6099 (RML), 2020 WL 5369056 (E.D.N.Y. Sept. 8, 2020), for its holding that, in a non-FLSA settlement agreement submitted to the Court in conjunction with a Cheeks review of a bifurcated settlement structure, a provision entirely prohibiting publication or disclosure of any allegations of unlawful conduct and the terms of the non-FLSA settlement agreement, except for circumstances of legal compulsion, coupled with a liquidated damages provision, was impermissible. See id., at *1-4 (citations & quotations omitted). This provision, prohibiting all non-compelled disclosure and publication of all allegations of unlawful conduct and the terms of the agreement, with liquidated damages as the remedy for breach, is far too broad to be useful in assessing an FLSA provision under Cheeks.

That non-publication provisions in FLSA settlement agreements are permissible, so long as they do not prohibit disclosures wholesale, is certainly not a settled statement of law as presented by Plaintiff and Grand Market.

The Court notes that a provision similar to that contained in the Revised Agreement has been approved in some cases, including some of those cited by Plaintiff and Grand Market. See, e.g., Webb v. Hungry Marketplace, Inc., 21 Civ. 83 (MMH), 2/25/2022 Order; ECF No. 22-2 at

13

5-6 (approving a settlement agreement containing a provision prohibiting the plaintiff from "in any manner publiciz[ing] the terms of this Settlement Agreement," with limited exceptions");[4] Pucciarelli v. Lakeview Cars, Inc., 16 Civ. 4751 (RRM) (RER), 2017 WL 2778029, at *3-4 (June 26, 2017) (approving a settlement agreement containing a provision requiring the plaintiffs to "treat the existence and terms of this Agreement as confidential" and preventing the plaintiffs from "actively publishing information about the existence or terms of this Agreement on social media, including, but not limited to[,] Facebook," with express exceptions (1) for the plaintiffs' spouses, attorneys, and tax advisors and (2) as required by law generally and by the Court for purposes of dismissing the action (citation omitted)); Lola v. Skadden Arps, Meagher, Slate & Flom LLP, 13 Civ. 5008 (RJS), 2016 WL 922223, at *2-3 (S.D.N.Y. Feb. 3, 2016) (approving a settlement agreement containing a provision prohibiting the plaintiffs and their attorney from "contact[ing] the media or utiliz[ing] any social media regarding this Settlement or its terms" and requiring that they respond "no comment" or that "[t]he matter has been resolved" if contacted with inquiries regarding the settlement (citation & quotations omitted)).

On the other hand, courts in this Circuit have disapproved of such provisions as well. See, e.g., Tarbell-Littman v. TFO USA Ltd., 19 Civ. 3063 (BCM), 2019 WL 13226417, at *1-3 (S.D.N.Y. Nov. 8, 2019) (quoting the non-publication provision from the settlement agreement, stating that the plaintiff "will not in any manner publicize the Agreement or its terms" and will state that "[t]he matter has been settled to the satisfaction of the parties" if asked, with limited exceptions for her spouse, accountants, tax preparers, and "workers of the Company"; reasoning that, "[w]hile some judges in this District have approved non-publication provisions with similar

---

[4] In approving the settlement agreement, the Webb Court specifically reasoned "that the second amended settlement agreement does not impose a duty of confidentiality." Id., 2/25/2022 Order (citation omitted).

14

limitations, others, including myself, have rejected such provisions, finding that they impermissibly undermine the FLSA's purposes; noting that, "[a]bsent a compelling justification, the non-publication clause . . . violates the public policy animating the FLSA and is therefore unenforceable" and that "the parties have presented no rationale for the non-publication provision"; and declining to approve the settlement agreement (citations & quotations omitted)); Hall v. ProSource Technologies, LLC, 14 Civ. 2502 (SIL), 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016) (noting that "the Settlement Agreement contains an impermissible non-disclosure provision prohibiting Plaintiffs from, among other things, communicating any information about this Agreement by writing any articles or other publications, discussing with the media or at any public event or forum, or posting any web or internet postings, pages or blogs" and reasoning that, "[a]lthough inclusion of the non-disclosure provision precludes approval of the Settlement Agreement in its current form, at the fairness hearing, the parties consented to its removal to ensure final approval of the Settlement Agreement" (citation & quotations omitted)).

This Court finds the second line of cases to be more persuasive, and believes that Paragraph 3 of the Revised Agreement runs afoul of Cheeks such that approval of the Revised Agreement in its current form should not be granted. This provision is problematic because, as conceded by Plaintiff and Grand Market, it does not permit Plaintiff and Grand Market to make truthful statements about their alleged experiences and their litigation of this case through the "affirmative" publication of such statements, in spite of the purported carveout. See Revised Mot. for Settlement Approval, ECF No. 26 at 3.

### c.   Mutual Non-disparagement Provision

Paragraph 4 of the Revised Agreement is a mutual non-disparagement provision. See Revised Mot. for Settlement Approval, ECF No. 26-1 at 6. The provision includes a specific

15

carveout as to Plaintiff for "providing truthful testimony to any court or governmental agency or for making truthful statements regarding Plaintiff's experience litigating the Action."  The provision also includes a carveout for both Plaintiff and Grand Market for "[s]tatements of fact about [their] . . . experiences in litigating their claims and defenses herein under the FLSA and NYLL."  Id.  The Court understands these provisions to not restrict the parties from discussing the underlying allegations and facts.  Mutual non-disparagement provisions do not run afoul of Cheeks if they "include a carve-out for truthful statements about plaintiffs' experience litigating their case."  Snead v. Interim HealthCare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (citation & quotations omitted).

As the mutual non-disparagement provision in the Revised Agreement contains a carveout, it does not run afoul of Cheeks and does not preclude approval of the Revised Agreement.

**B.    The Court Respectfully Recommends Approval Of The Proposed Dismissal With Prejudice Of The Action As Against Kings Logistics And Mr. Khodjaev Without Cheeks Review.**

Kings Logistics and Mr. Khodjaev have not appeared in this action.  Plaintiff "has been unable to establish contact with any representative of" Kings Logistics, and Plaintiff has similarly "been unable to establish contact with [Mr.] Khodjaev or any representative of his."  Mot. for Settlement Approval, ECF No. 24 at 3.  As a result, Grand Market "is the only defendant in this matter with which Plaintiff has been able to discuss settlement."  Id.  If the Revised Agreement were to be approved, Plaintiff would dismiss the entire action with prejudice, including against Kings Logistics and Mr. Khodjaev.  See id at 1.  As these three parties have not reached a settlement, under Cheeks, the proposed dismissal of the action against Kings Logistics and Mr. Khodjaev with prejudice, without Cheeks review, is permissible under

16

the precise language of Federal Rule of Civil Procedure 41.  See, e.g., Villa v. Highbury Concrete Inc., No. 17 Civ. 984 (PK), 2022 WL 19073649, at *1 n.1 (E.D.N.Y. Nov. 25. 2022) (considering a joint motion for preliminary approval of a class action settlement of FLSA and NYLL claims, noting that "[d]efault was entered against Defendants RG Labor Services Inc. and The Laura Group Inc.," and stating that "Plaintiffs and Highbury Defendants intend that the final Order approving the Settlement Agreement will include a dismissal with prejudice as to these defaulting Defendants" (citations omitted)).

### III. CONCLUSION

The Court respectfully recommends that the Revised Agreement be approved as fair and reasonable pursuant to Cheeks with removal of the non-assistance provision at paragraph 2(g) and non-publication provision at paragraph 3 of the Revised Agreement, as discussed supra, Sec. II(a).  If Plaintiff and Grand Market remove the aforementioned provisions from the Revised Agreement, the Court respectfully recommends dismissal of the action with prejudice and in its entirety, including as against Kings Logistics and Mr. Khodjaev, in accordance with the proposed stipulation of dismissal filed, see Proposed Stip. of Dismissal, ECF No. 26-1 at 10-11.[5]

In light of this recommendation, Plaintiff and Grand Market are to apprise the Court, via the filing of a joint letter, of whether they intend to remove the two offending provisions from

---

[5] The proposed stipulation of dismissal refers to Federal Rule of Civil Procedure 41(a)(2).  The basis for the dismissal is Federal Rule of Civil Procedure 41(a)(1)(A)(ii), which, subject to, among other things, "any applicable federal statute, [permits] the plaintiff [to] . . . dismiss an action without a court order by filing: . . . (ii) a stipulation of dismissal signed by all parties who have appeared."  Plaintiff and Grand Market are the only parties to have appeared in the action, and the proposed stipulation of dismissal is drafted to require signatures of both of their counsel. See ECF No. 26-1 at 11.  If Plaintiff and Grand Market intend to proceed with the Revised Agreement as permitted by the Court, they should submit an executed stipulation of dismissal for review, revised to correctly cite Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

17

the Revised Agreement and file a second amended settlement agreement for approval, to litigate the action, or to object to this report and recommendation on or before July 19, 2023.[6]

IV. **OBJECTIONS**

This report and recommendation will be posted on the docket. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (quotations & citation omitted).

Dated: Brooklyn, New York
July 5, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge

---

[6] If the Plaintiff and Grand Market intend to proceed with the Revised Agreement as permitted by the Court, they should also replace the word "Defendants," used in an apparent error, with "GMI" at the following points in the Revised Agreement: paragraph 2(a), line 6; paragraph 2(e), line 4; paragraph 2(f), line 2; and paragraph 8, line 2.

18